UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES -- GENERAL**

Case No.   **ED CV 11-01587-VBF-DTB**         Dated:   May 23, 2014

Title:   ***Jorge H. Alvarez, Petitioner v. R. Lopez (Acting Warden), Respondent***

PRESENT:   HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

| N/A | N/A |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PETITIONER | ATTORNEYS PRESENT FOR RESPONDENT |
|---|---|
| N/A | N/A |

PROCEEDINGS (in chambers):   Opinion and Order  (1)   Overruling the Petitioner's Objections;
(2)   Adopting the R&R as Supplemented;
(3)   Denying the Petition for Lack of Merit;
(4)   Denying a Certificate of Appealability

    This is California state prisoner Jorge Alvarez ("petitioner")'s action for habeas corpus relief pursuant to 28 U.S.C. § 2254. In ground one, petitioner claims that his trial attorney rendered ineffective assistance of counsel ("IAC") in violation of his Sixth Amendment right to counsel by failing to do the following: move to suppress a firearm, move to suppress statements he made to police, try to subpoena a witness, demand proper jury instructions, and conduct adequate pretrial investigation. He also asserts claims for prosecutorial misconduct (ground 2), instructional error (grounds 3-4), and insufficient evidence (ground 5). The Magistrate has issued a Report and Recommendation ("R&R") recommending that all claims be denied for lack of merit; petitioner filed extensive objections, respondent filed a response, and petitioner replied. For reasons that follow, the Court will overrule the objections, adopt the R&R, and deny the petition for lack of merit. The Court will supplement the R&R in these respects: (1) address petitioner's objections; (2) on Ground One, identify U.S. Supreme Court precedent applying the Fourth Amendment and the plain-view doctrine to automobiles; (3) on Ground Three, analyze state law governing the jury instructions and elements of petitioner's crime; and (4) explain why

MINUTES FORM 90                                                                        Initials of Deputy Clerk   __jmb__
CIVIL - GEN

petitioner clearly has not stated a colorable claim for federal habeas relief predicated on actual innocence. Finally, the Court will deny a certificate of appealability and enter judgment in favor of respondent.[1]

**Background.** Victim Jose Pedro was driving when he saw a red truck coming up behind him and then pulling up next to his vehicle on the driver's side, whereupon he heard an explosion, his windows shattered, he ducked and throw himself down across the seats, and he veered off the road and crashed into a pole. When he sat up, he saw the same red truck parked, and the driver of the red truck fired several more shots, two of which hit Pedro in the leg, before speeding away. Later that day, police saw petitioner Alvarez sitting in a red truck that matched the description given by the victim, acting "disoriented" and claiming he had run out of gas. As Alvarez got out, police noticed a spent shell casing on the floorboard and a magazine clip under the passenger seat, leading them to search the vehicle and find a rifle, three magazines, and another spent shell casing. *See People v. Jorge H. Alvarez*, No. E047365, 2010 WL 20923, *1 (Cal. App. Jan. 5, 2010). After being arrested, Alvarez admitted to police that the rifle was his and said he was the only one who had driven the red truck that morning. Bullets recovered from the victim's vehicle and from a nearby house matched Alvarez's rifle. *See id.*

**Procedural History.** In 2008, a Riverside County jury found Alvarez committed attempted murder with premeditation and deliberation and discharged a firearm causing great bodily injury; he was sentenced to a term of 32 years to life. Alvarez appealed, asserting claims corresponding to the claims herein. In 2010 the Court of Appeal issued a reasoned written opinion affirming the judgment, and the California Supreme Court summarily denied his ensuing petition for review without comment or citation, *see People v. Jorge H. Alvarez*, No. E047365, 2010 WL 20923 (Cal. App. Jan. 5, 2010), *rev. den.* (Cal. Mar. 10, 2010). Alvarez then filed habeas petitions in Superior Court (raising claim 1), the Court of Appeal (claim 1), and the California Supreme Court (claims 1 and 2). The Superior Court issued a reasoned opinion denying the habeas petition (claim 1).

---

[1] The R&R accurately states the AEDPA standard of review. The Court would add that "a federal habeas court reviewing a state court's rejection on the merits of a federal constitutional claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court and not evaluate the quality, or lack thereof, of the state court's written opinion supporting its decision." *Young v. Stephens*, 2014 WL 509376, *25 (W.D. Tex. Feb. 10, 2014) (citing, *inter alia*, *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)). This is because AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1291 (11th Cir. 2011) (citing *Richter*, – U.S. –, 131 S. Ct. at 786).

**In Claim 1-A, Petitioner contends that his attorney rendered IAC by failing to move to suppress the gun found in his vehicle on the ground that the search was unconstitutional**, R&R at 8.  As the Magistrate notes, petitioner provides very little detail as to why he believes the firearm was unlawfully seized and on what basis his counsel could have moved to suppress it, and such a conclusory claim does not warrant habeas relief.  *See* R&R at 12 (citing *James*, 24 F.3d at 26); *see also, e.g., Hammonds v. Harrison*, 2008 WL 4614308, *12 (C.D. Cal. Oct. 14, 2008) (denying § 2254 petitioner's IAC claim, stating, "Other than his conclusory allegations, Petitioner provides no evidence that the search was unconstitutional.  * * * Consequently, it appears that there would have been no reason for counsel to bring a suppression motion and, even if she had, no evidence that the motion would have been successful."), *aff'd*, 453 F. App'x 717 (9th Cir. 2011), *amended o.g. on denial of reh'g* (9th Cir. Nov. 2, 2011), *cert. denied*, – U.S. –, 132 S. Ct. 1866 (2012).

**Moreover, petitioner has not pointed to any evidence (in the record before the state appellate court)[2] of counsel's reasons for not moving to suppress the firearm.**  Where "the record is silent regarding counsel's reasons for not moving to suppress any alleged illegally seized evidence," a petitioner cannot show that he overcame *Strickland*'s presumption that counsel's decision was a tactical choice and a reasonable one.  *See Goines v. Ryan*, 2013 WL 1498909, *15 (D. Ariz. Apr. 10, 2013), *R&R adopted*, 2013 WL 5498219 (D. Ariz. Oct. 2, 2013).  As the 11th Circuit reasoned in refusing to disturb a state court's rejection of a similar IAC claim,

> [T]he record is silent as to why trial counsel did not pursue a motion to suppress the evidence obtained from Grayson incident to his arrest on Fourth Amendment grounds; Grayson's habeas counsel did not inquire as to trial counsel's reasons for not raising such a claim either during [trial] counsel's deposition or his testimony at the state habeas hearing.  "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Therefore, where the record is incomplete or unclear about counsel's actions, we will presume that he . . . exercised reasonable professional judgment."

---

[2] "Review under 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, – U.S. –, 131 S. Ct. 1388, 1398 (2011).  "Even where a claim for habeas relief is summarily denied by the state court on the merits without discussion or analysis, as was the case in *Pinholster* – the federal habeas court is still ordinarily limited to consideration of the record that was before the state court."  *Barclay v. Chappell*, 2014 WL 931867, *11 n.12 (E.D. Cal. Mar. 10, 2014) (citing *Pinholster*, 131 S. Ct. at 1402) ("Section 2254(d) applies even where there has been a summary denial.")).

*Grayson v. Thompson*, 257 F.3d 1194, 1218 (11th Cir. 2001) (quoting *Chandler v. US*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc)) (brackets omitted).

**Finally, the Supreme Court holds that to prevail on a claim for IAC "for failing to file a motion to suppress evidence . . . , a prisoner must prove** (1) that his Fourth Amendment claim was meritorious, and (2) that there is a reasonable probability that the result of the proceeding would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 382-83, 106 S. Ct. 2574 (1986). Without petitioner identifying relevant evidence in the state-court record and providing developed reasoning, it cannot be said that the state court contradicted or unreasonably applied *Kimmelman* in determining that he had not met either prong. *Cf. Walker v. Giurbino*, 2008 WL 4490064, *17 (E.D. Cal. Oct. 3, 2008) (denying § 2254 claim that counsel rendered IAC by failing to obtain a suppression hearing) ("Petitioner does not indicate . . . what evidence was illegally obtained . . . nor whether that evidence was ever presented at trial, nor how such evidence, even if presented at trial, altered the outcome in such a way that it[s] absence would have benefitted [him]."), *recon. denied*, 2009 WL 3042404 (E.D. Cal. Sept. 21, 2009).

**The Magistrate is correct that counsel could not have performed deficiently by "failing" to move to suppress the firearm, because petitioner has failed to show that the search and seizure were unlawful**, *see* R&R at 13. Under *Horton*, 496 U.S. at 135-37, police may seize evidence that is in plain view without first securing a warrant if their initial intrusion is lawful and the incriminating nature of the evidence is immediately apparent. *See* R&R at 13; *see also Kentucky v. King*, – U.S. –, 131 S. Ct. 1849, 1858 (2011) ("[O]fficers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed.") (citing *Horton*, 496 U.S. at 136-40). The Supreme Court reasons that "[w]hether the property is residential or commercial, . . . '[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.'" *California v. Ciraolo*, 476 U.S. 207, 213, 106 S. Ct. 1809 (1986) (citation omitted). Petitioner identifies no U.S. Supreme Court holding which would compel the state courts to find that the officer violated the Fourth Amendment by being in a position to see the rifle parts and the spent shell casing in plain view inside the vehicle.

It is undisputed that when the officer approached petitioner's vehicle, the vehicle was disabled on a public roadway. This is significant, because petitioner has not identified any Supreme Court holding that the Fourth Amendment prohibits police from approaching vehicles without a warrant or probable cause in such a situation. The Supreme Court's Fourth Amendment decisions in the area of disabled vehicles have tended to the contrary. In *South Dakota v. Opperman*, 428 U.S. 364, 368-69, 96 S. Ct. 3092, 3097 (1976), the Supreme Court stated:

> To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities.  * * *  The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

*See also Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523 (1973) (where the accused's car was disabled due to an accident and constituted a nuisance along a highway and the accused was intoxicated and later comatose and thus was unable to arrange for the car to be towed, it was not unreasonable under Fourth Amendment for police to have the vehicle towed to a private garage and then conduct a warrantless search of the trunk).

**Finally, the Report assumes that the officer reasonably treated the spent shell casings and the gun parts as immediately apparently incriminating.  To the contrary, "[a]mmunition is not automatically contraband that may be seized without a warrant"**, *see US v. Blom*, 242 F.3d 799, 808 (8th Cir. 2001); *see, e.g., US v. Guevara*, 745 F. Supp.2d 1039, 1051 (N.D. Cal. 2010) ("Although the officers' examination of the contents of the dresser drawers was permissible because the warrant authorized a search for items that may have been located in the drawers, the ammunition was not properly seized because the incriminatory nature of the ammunition, if any, was not immediately apparent.").  Nonetheless, it was not contrary to or an unreasonable application of any Supreme Court holding for the state court to determine that those objects had an immediately incriminating appearance *under these peculiar circumstances*.  There was a spent shell casing in the vehicle, gun parts poking out from under the seat where one arguably would not normally expect a lawfully used gun to be kept,[3] and, significantly, *petitioner appeared disoriented and exited without being asked to do so.*  As the Magistrate notes (R&R at 13), because a motion to suppress the firearm and casing seized from the vehicle likely would have failed, it cannot be deficient performance to "fail" to move to suppress those items.  The Supreme Court has never held that failure to make a meritless or likely futile motion can constitute deficient performance.

---

[3]

*Cf. US v. Von Bargen*, 2012 WL 1995081, *3 (D. Idaho May 25, 2012) (denying motion to suppress, court stated, "After Deputy Tatum pulled the pickup over, exited his vehicle and approached the pickup from behind, he saw in the pickup's bed – In plain view – 5 rifles with tags attached to the triggers, which would lead a reasonable officer to suspect that the rifles were stolen from the pawnshop.  He could see the tags without having to conduct some further search, and thus his plain view of the rifles during this stop can be used to support their seizure.") (citing *Minnesota v. Dickerson*, 508 U.S. 366, 374-75, 113 S. Ct. 2130 (1993)).

MINUTES FORM 90                                                                      Initials of Deputy Clerk   jmb
CIVIL - GEN

**In his objections, petitioner** states that he disagreeing that the state court could reasonably have determined that the gun found in his vehicle was constitutionally seized because it was in plain view (from a location where the officer had a right to be) under Supreme Court precedent. Petitioner acknowledges that "the pickup truck Petitioner was driving was out of gas on the side of the freeway" but asserts that "'probable cause' to search Petitioner's vehicle is that which is at issue on the Fourth Amendment claim." Doc 34 at 8. Petitioner also reiterates the claim that trial counsel rendered IAC by failing to move to suppress the firearm, Doc 34 at 16, but he never identifies any defect of law, fact, or logic in the Magistrate's analysis of this subclaim.

**In its response to the objections, the respondent** accurately notes that petitioner did *not* provide the state court which rejected this claim with a declaration from trial counsel as to whether he considered this issue, which alone shows that the state court's rejection of this claim was not erroneous under AEDPA. *See* Doc 36 at 3 (citing, *inter alia*, *Hernandez v. Hedgpeth*, 2013 WL 3449368l, *1 (C.D. Cal. July 8, 2013) (rejecting claim that counsel rendered IAC by failing to interview a particular witness, where petitioner provided "no evidence in the form of an affidavit or declaration from defense counsel stating whether, in fact, he interviewed [witness]" and thus there was "no reason to accept Petitioner's self-serving speculation that counsel failed to do so") and *Blueearth v. Singh*, 2013 WL 392032, *3 (C.D. Cal. Jan. 31, 2013) ("Petitioner provides neither a declaration from his counsel nor from Home Deport regarding whether anyone requested or viewed the surveillance tapes.")). Petitioner's reply (Doc 37) does not identify any defect in the Magistrate's analysis of this IAC subclaim.

<u>In Ground 1B, petitioner contends that his attorney rendered ineffective assistance by failing to move to suppress statements he made to police on the ground that the interrogation violated *Miranda*</u>, R&R at 8. The Magistrate correctly finds this subclaim too factually unsupported to merit relief, R&R at 14. In any event, as the Magistrate notes, the record discloses no reason to believe that officer Donis's interview of petitioner violated *Miranda*. Donis's uncontradicted testimony was that before the interview, he advised petitioner of his *Miranda* rights in Spanish, petitioner's native language, and petitioner initialed a written statement indicating he had been advised of and understood each of those rights, R&R at 14. *Accord Garner v. Mitchell*, 557 F.3d 257, 2634 (6th Cir. 2009) (en banc) (affirming denial of § 2254 petition) ("Because police had no reason to believe that Garner misunderstood the warnings, and because it is undisputed that the officers were otherwise reasonable and careful in giving the warnings and obtaining the confession, there is no basis for invalidating Garner's *Miranda* waiver."). **Petitioner's objection (Doc 34 at 9) states** only that he "does not agree that a *Miranda* warning when he was not fully cognizant of the consequences of those warnings is a valid exception to allow for the testimony

as to his admissions to the CHP Officer on the day of his arrest." His objection and reply (Doc 36) do not purport to identify any specific defect of law, fact, or logic in the Magistrate's analysis.

In Ground 1-C, petitioner contends that his trial attorney rendered IAC by failing to move to subpoena defense witnesses, *see* R&R at 8, who petitioner alleges were "first-hand witnesses to the incident which would have testified that petitioner was not the person that [sic] fired any weapon at any one", R&R at 15. The Magistrate cites no Supreme Court authority in his discussion of this ineffective-assistance subclaim. Rather, the Magistrate relies only on Ninth Circuit decisions holding that "in order to show ineffective assistance of counsel based on the failure to call a witness, petitioner must show that a particular witness was willing to testify; what their [sic] testimony would have been; and that their testimony would have been sufficient to create a reasonable doubt as to guilt." R&R at 15 (citations omitted). The Magistrate cogently concludes, "Petitioner has failed to sustain his burden of demonstrating that his counsel was ineffective, as he has not adduced even the most basic of information regarding the identity or proposed testimony of the alleged witnesses." R&R at 16.

**As for petitioner's objection to the Report's analysis of this ineffective-assistance subclaim (Doc 34 at 20-22), he cites no Supreme Court holding and fails to undermine the Report.**

In Ground 1D, petitioner contends that his trial attorney rendered constitutionally ineffective assistance of counsel by failing to "address proper jury instructions", R&R at 8.[4] The Court rejects this claim solely on the ground that it is undeveloped because petitioner fails to specify the instructions to which his counsel should have objected, R&R at 16. In his objections (Doc 34 at 22), petitioner clarifies that he is arguing that the instructions actually delivered unconstitutionally reduced the prosecution's burden of proof, and that he is "not addressing other unmentioned jury instructions." Petitioner goes on to discuss Supreme Court decisions which held that the Constitution prohibits conviction except on proof beyond a reasonable doubt and that this requirement lies at the foundation of our system (Doc 34 at 12-14). Petitioner fails, however, to identify any Supreme Court holding

---

[4]   Petitioner did not present his fourth and fifth ineffective-assistance subclaims to the state courts, so they are unexhausted. The Magistrate states, "because it is clear that these subclaims are not colorable, the Court exercises its discretion to consider the claims on the merits." R&R at 8 n.4 (citing, *inter alia*, 28 U.S.C. § 2254(b)(2)). This Court agrees that the efficient course is to consider these subclaims despite petitioner's failure to exhaust them, because it is "perfectly clear" that they are not even colorable. *See* R&R at 8-9 n.4 (quoting *Cassett*, 406 F.3d at 623-24). Title 28 U.S.C. § 2254(b)(2) states that a habeas petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the court of the state."

that the state appellate court contradicted or unreasonably applied in rejecting this claim.  **In its response to petitioner's objections, respondent persuasively argues that the state appellate court committed no AEDPA error in rejecting the instructional-error claims because**

> [a]s the California Court of Appeal noted, [petitioner]'s attempt to characterize the instructions as lowering the [prosecution]'s burden, imposing a burden on the defense, and preventing the jury was [sic] considering the lack of evidence was based on a distortion of the instructions.  Alvarez carries that distortion over to his objections. [His] argument relies on isolating single words in the instructions "out of context for exaggerate[d] emphasis."  (Lodgment 6 at 7.)  "The instructions as a whole clearly informed the jury that the prosecution bore the burden of proof and that defendant was not required to disprove anything."  (Lodgment 6 at 7-8.)
>
> Contrary to [petitioner]'s argument, his jury was repeatedly instructed regarding the presumption of innocence and the burden of proof.  The jury was particularly informed with CALCRIM No. 355 that the defendant "may rely on the state of the evidence and argue that the [prosecution has] failed to prove the charges beyond a reasonable doubt."  (CT 123; RT 199.)  Likewise, the jury was repeatedly told that about the presumption of innocence and the burden of proof. CALCRIM No. 220 informed the jury,
>
>> A defendant in a criminal case is presumed to be innocent.  This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whatever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.  [¶] . . . [¶] Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.
>
> (CT 120; RT 191.)
>
> The jury received a similar instruction describing the presumption of innocence and the burden of proof before trial. (RT 29.)  CALCRIM No. 315, describing eye-witness testimony, also told the jury, "The People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime.  If the People have not met [t]his burden, you must find the

defendant not guilty." (CT 122-123; RT 198.) This was a routine application of state law and did not result in any due process violation or a deprivation of fair notice. *See, e.g., Bradshaw v. Richey*, 546 U.S. 74, 76-78, 126 S. Ct. 602 . . . (2005). [Petitioner] has failed to show an error, much less a denial of due process.

Doc 36 at 6-7. **Most of petitioner's reply supporting his objection on this score does not purport to identify any specific defect in the Magistrate's analysis**, *see* Doc 37 at 4-9. Petitioner's reply asserts that "we [sic] recently considered whether an error similar to that which occurred was structural in *Neder v. United States* (1999) 527 U.S. 1 . . . ." Doc 137 at 9. Petitioner fails, however, to demonstrate that the circumstances and instructions in his case materially resemble those which led the Supreme Court to find a constitutional violation in *Neder*. *Neder* was a prosecution for mail fraud, bank fraud, wire fraud, and filing a false tax return, where materiality was an element of the tax offense. *Neder* held that the trial court committed constitutional error by instructing the jury that it need not consider the materiality of any false statements to convict on the tax offense because materiality was not for the jury to decide, and by failing to instruct the jury that materiality was an element of mail and wire fraud. *See Neder*, 527 U.S. at 6.

**The rest of the reply does nothing to identify any defect in the Magistrate's analysis.** *See* **Doc 37** at 10-12. Petitioner's reply concludes by asserting – with no analysis, no citation to testimony or other evidence in the state-court record, and no specific application of Supreme Court authority to the facts of his case – that

> the jury was presented here with conflicting identifications and very little evidence concerning Petitioner's mental state. Despite the significant gaps in the evidence, the jury filled in the blanks and accepted in full the prosecution's theory of the case. It cannot be said beyond a reasonable doubt that the jury would have found Petitioner guilty on any count in the absence of these instructional errors, which precluded consideration of what was missing from the evidence, and lowered the prosecution's burden of proof. * * *

Doc 137 at 14. Petitioner's objections to the R&R's analysis of claim 1-D are unavailing.

Ineffective Assistance Claim 1-E: Failure to Conduct Adequate Pretrial Investigation

Petitioner contends that trial counsel rendered constitutionally ineffective assistance by inadequate pretrial investigation, R&R at 8. It is true that "*Strickland* does not establish that a cursory investigation automatically justifies a tactical decision . . . . Rather, a reviewing court must consider the reasonableness of the investigation

. . . ." *Wiggins v. Smith*, 539 U.S. 510, 527 (citing *Strickland*, 466 U.S. at 691). But this claim fails because petitioner does not specify what counsel should have investigated, what evidence he allegedly would have discovered, and how that evidence would have benefitted him. R&R at 16; *see, e.g., Turner v. Stainer*, 2012 WL 5389762, *5 (C.D. Cal. Nov. 5, 2012) (citing *Greenway v. Schriro*, 653 F.3d 790, 804 (9th Cir. 2011)); *US v. Joseph*, 2014 WL 794656, *8 (D. Haw. Feb. 27, **2014**) (denying § 2255 IAC claim).

**In his objections, petitioner asserts that** the alleged fact that his counsel "did not investigate his defense, such as eyewitnesses who would have exonerated him . . . , militates strongly in favor of the conclusion that his representation of Petitioner was constitutionally deficient." Doc 34 at 25. He contends that the alleged failure to investigate "was a poor choice of strategy . . . because there was no evidence that Petitioner was the shooter . . . ." Doc 34 at 25. This does not identify any error of law, fact, or logic in the Magistrate's conclusion that this claim is unsupported, R&R at 16, and petitioner never explains how the state appellate court's rejection of this inadequate-investigation claim contradicted or unreasonably applied any Supreme Court holding.

<u>The Court has nothing to add to the discussion of Claim Two, Prosecutorial Misconduct, R&R at 17.</u>

CLAIM THREE: INSTRUCTIONAL ERROR - CALCRIM No. 223

Ground Three claims that the delivery of CALCRIM 223 led the jury to believe that petitioner was required to prove his innocence, *see* R&R at 17. Putting aside the possibility that the instructional-error claims are procedurally defaulted, R&R at 18, the Magistrate rightly concludes that the California Court of Appeal did not unreasonably apply or rule contrary to any Supreme Court holding in denying this claim on direct appeal.

The Magistrate rightly notes that the Due Process Clause prohibits conviction upon proof less than beyond a reasonable doubt of every fact or element necessary. *See* R&R at 20 (citing *Winship*, 397 U.S. at 364). **The Court would further note the Supreme Court's holding that "*[t]he Sixth Amendment*** provides that those 'accused' of a 'crime' have the right to a trial 'by an impartial jury.' This right, *in conjunction with the Due Process Clause*, requires that each element of a crime be proved to the jury beyond a reasonable doubt**." *Alleyne v. US*, – U.S. –, 133 S. Ct. 2151, 2156 (2013) (J. Thomas for the Court, joined in pertinent part by JJ. Ginsburg, Sotomayor, and Kagan) (citing *Winship*, 397 U.S. at 364, and *US v. Gaudin*, 515 U.S. 506, 510, 115 S. Ct. 2310 (1995)) (emphasis added). For federal habeas relief, petitioner must show that, considering the instruction in the context of the trial record and instructions as a whole, the challenged instruction by itself so infected the entire trial that the resulting conviction violated due process. *See* R&R at 20 (cites omitted).

The Supreme Court has held that a jury instruction that "reduce[s] the level of proof necessary for the [prosecution] to carry its burden ... is plainly inconsistent with the constitutionally rooted presumption of innocence." *See Cool v. US*, 409 U.S. 100, 104, 93 S. Ct. 354 (1972); *see also Sandstrom v. Montana*, 442 U.S. 510, 520–24, 99 S. Ct. 2450 (1979) (a jury instruction that shifted the burden of persuasion to the defendant violated due process). However, the Supreme Court has also held that "so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S. Ct. 1239 (1994) (citations and internal quotation marks omitted).

**Given these holdings, the Magistrate correctly concludes that petitioner has not shown CALCRIM 223 was erroneous**, let alone that it so infected the entire trial as to render his conviction violative of due process under Supreme Court law. At the time of trial, November 2008, CALCRIM 223 stated in pertinent part that

> Both direct and circumstantial evidence are acceptable types of evidence to prove or disprove the elements of a charge, including intent and mental state and acts necessary to a conviction, and neither is necessarily more reliable than the other. Neither is entitled to any greater weight than the other. You must decide whether a fact in issue has been proved based on all the evidence.

CALCRIM 223 (2008). The Court of Appeal did not cite any federal decisions, relying instead of California decisions rejecting similar challenges to 223. *See* R&R at 19-20 (quoting LD 6 at 6-8). Nevertheless, **it was not objectively unreasonable to reject the federal version of this challenge to 223.** This is because petitioner failed to identify any Supreme Court decision holding that jury-instruction language like the 223 language violates due process by suggesting the defendant has the burden of disproving any element of the crime. As the Court of Appeal reasoned (R&R at 19-20), when taken in conjunction with CALCRIM 220 (reasonable doubt)[5]

---

[5]

CALCRIM No. 220, as given to the jury by the state trial judge in this case, provides:

The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.

A defendant in a criminal case is presumed to be innocent. This presumption require that the

and 222 (direct and indirect evidence), CALCRIM 223 made clear that both direct and circumstantial evidence are acceptable means of proof, and did not plausibly suggest petitioner was required to disprove anything.

Under the plain language of CALCRIM 223 as delivered to petitioner's jury, a defendant can (but is not required to) offer evidence to negate or "disprove" an element of a charge. This instruction merely provides that if a defendant does so, such evidence may be either direct or circumstantial, and that neither type of evidence is necessarily more reliable than the other. The instruction does not state or imply that a defendant has a burden to disprove a charge. Again regarding the burden of proof, the jury was instructed with CALCRIM 220, which made it clear that the jurors must find that the government proved guilt beyond a reasonable doubt. Consequently, the Court has no basis for finding that the Court of Appeal's rejection of this instructional error claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Paredes v. Allison*, 2014 WL 1028955, *11 (C.D. Cal. Mar. 17, 2014) (denying as "nonsensical" a section 2254 claim that delivery of CALCRIM 223 "precluded the jury from considering the lack of evidence", court stated, "Petitioner's interpretation of CALCRIM 223 is strained. Evidence can certainly prove or disprove the elements of an offense. There is no suggestion in the instructions that the defense had a burden to disprove a charge. On the contrary, the jury was instructed that the prosecution has the burden to prove the defendant guilty beyond a reasonable doubt."); *Johnson v. Calif.*, 2011 WL 3962119, *14-*17 (C.D. Cal. July 25, 2011) (recommending rejection of § 2254 burden-of-proof challenge to CALCRIM 223, 226 and 302), *R&R adopted*, 2011 WL 3962115 (C.D. Cal. Sept. 1, 2011). **Petitioner's objections fail** to identify any Supreme Court decision holding that language like the challenged 223 language violates due process by suggesting that the defendant has the burden of disproving any element of the crimes.

**Petitioner objects that CALCRIM 220, 222, and 223 combined to make the jury believe that they could not consider the lack of evidence of guilt in determining whether there was a reasonable doubt as**

---

People prove a Defendant guilty beyond a reasonable doubt. Whenever I tell you that the People must prove something, I mean they must prove it beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

**to guilt.**  Petitioner cites a Supreme Court case stating that "[n]umerous cases have defined a reasonable doubt as doubt 'based on reason which arises from the evidence of lack of evidence,'" Doc 34 at 38 (quoting *Johnson v. Louisiana*, 406 U.S. 356, 360 (1971)).  This proposition, however, is consistent with his theory of instructional error only at an unhelpful level of generality.[6]  The rest of his argument on this theory cites only state-court decisions (Doc 34 at 38-41), which do not constitute "clearly established federal law" for purposes of AEDPA § 2254 review.  Petitioner identifies no defect of fact, law, or logic in the Magistrate's analysis of this subclaim.

**Petitioner next objects that CALCRIM 220, 222, and 223 combined led the jury to believe that they could convict by a preponderance of the evidence.**  He asserts that CALCRIM 220 is essentially the same as the instruction held constitutionally deficient in *Coffin v. US*, 156 U.S. 432, 453, 15 S. Ct. 394 (1895):

> [i]n *Coffin*, the trial court refused the following defense instruction
>
>> "The law presumes that persons charged with crime are innocent until they are proven, by competent evidence, to be guilty.  To the benefit of this presumption the defendants are all entitled, and this presumption stands as their sufficient protection, unless it has been removed by evidence proving their guilt beyond a reasonable doubt."
>
> (*Id.* [156 U.S.] at 452.)
>
> Instead, the trial court instructed as follows: "Before you can find any one of the defendants guilty, you must be satisfied of his guilt, as charged in some of the counts of the indictment, beyond a reasonable doubt."  (*Id.* at pp. 452-453.)  The trial court went on to admonish the jury:
>
>> To justify you in returning a verdict of guilty, the evidence must be of such a character as to satisfy your judgment to the exclusion of every reasonable doubt.

---

[6] *Cf. Desai v. Booker*, 732 F.3d 628 (6th Cir. 2013), where a Sixth Circuit panel stated:

> *To the extent [that] any Supreme Court precedent supports Desai's due process claim, it does so* only in dicta and *at a daunting level of generality*.  The Supreme Court has not held that the admission of the type of evidence at issue here, a codefendant's nontestimonial hearsay confession, violates due process based on its lack of reliability.  What it has done is hold out the possibility that "the introduction" of "evidence" in general could be "so extremely unfair that its admission violates fundamental conceptions of justice."

*Id.* at 630-31 (quoting *Dowling v. US*, 493 U.S. 342, 352, 110 S. Ct. 668 (1990)) (emphasis added).

MINUTES FORM 90                                                                                                   Initials of Deputy Clerk ___jmb___
CIVIL - GEN

> If, therefore, you can reconcile the evidence with any reasonable hypothesis consistent with the defendant's innocence, it is your duty to do so, and in that case find the defendant not guilty. And if, after weighing all the proofs and looking only to the proofs you impartially and honestly entertain the belief that the defendant may be innocent of the offenses charged against them . . . .
>
> A reasonable doubt, as that term is employed in the administration of the criminal law, is an honest, substantial misgiving, generated by the proof or the want of it. It is such a state of the proof as fails to convince your judgment and conscience, and satisfy your reason of the guilt of the accused.

(*Coffin v. United States*, *supra*, 156 U.S., at pp. 452-453.)

Doc 34-1 at 5. According to petitioner, the instruction in *Coffin* was held unconstitutional even though it "clearly instructed [the jury] on the meaning of 'beyond a reasonable doubt'", in some ways "more clearly and completely than [the] present[-]day instruction." Doc 34-1 at 5. Petitioner notes the Supreme Court nonetheless held the *Coffin* instruction was unconstitutional because it "excluded the concept of 'presumption of innocence'" by directing the jury to "'impartially' consider the proof adduced . . . ." *Id.* Likewise, petitioner reasons, the judge in his case, by instructing the jurors per CALCRIM 220 to "impartially compare and consider all the evidence that was received throughout the entire trial," "negated the presumption of innocence [and] also suggested a weighing of evidence akin to the lesser civil standard of preponderance of the evidence", *id.* at 6.

But as respondent retorts, petitioner is essentially arguing that the Court of Appeal should have viewed CALCRIM 220's "impartially compare and consider all the evidence" in isolation from the other instructions delivered to his jury. *See* Doc 36 at 6. If the Court of Appeal had taken that approach, it would have contradicted *Waddington v. Sarausad*, 555 U.S. 179, 129 S. Ct. 823 (2009), which issued before that court rejected petitioner's instructional-error argument in 2010. *Sarausad* held that when determining whether an instruction impermissibly relieved the prosecution of its burden of proving every element beyond a reasonable doubt, the instruction "must be considered in the context of the instructions as a whole and the trial record." *Sarausad*, 555 U.S. at 190-91 (citing *Estelle*, 502 U.S. at 72); *see also Francis v. Franklin*, 471 U.S. 307, 309, 105 S. Ct. 1965 (1985); *see, e.g., Tassin v. McEwen*, 2014 WL 555914, *20-*21 (C.D. Cal. Feb. 10, 2014); *accord US v. Aldawsari*, 740 F.3d 1015, 1020 (5th Cir. 2014) (direct appeal). "[I]t is not enough that there is some 'slight possibility' that the jury misapplied the instruction . . . ." *Sarausad*, 555 U.S. at 191. Rather, the question is whether the ailing instruction by itself so infected the trial that the resulting conviction violates due process. *Id.*

***Kansas v. Marsh*, 548 U.S. 163, 126 S. Ct. 2516 (2006) provides guidance here.** There the Supreme Court, on AEDPA review, refused to disturb the state court's determination that a challenged jury instruction did not create an impermissible general presumption in favor of the death penalty. *See Marsh*, 548 U.S. at 178. To reach that conclusion, the Court explained, it would have to read the challenged instruction in isolation, "contrary to 'the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Marsh*, 548 U.S. at 178-79 with n.6 (quoting *Boyde v. California*, 494 U.S. 370, 378 (1990)). The Court concluded that, in the context of all the instructions delivered, the challenged instruction did not violate due process. *See Marsh*, 548 U.S. at 179 n.6 ("The constitutionality of a State's death penalty system turns on review of that system in context. We thus reject his disengaged interpretation of § 21-4624(e)."). The defendant's due process right was adequately safeguarded because the court also instructed the jury that life imprisonment was the default if the prosecution could not prove an aggravating circumstance beyond a reasonable doubt, that defendant could not be sentenced to death unless the State bore its burden of demonstrating that mitigating did not outweigh aggravating circumstances, and that life imprisonment is imposed if the jury cannot reach unanimity on any of these issues. *See id.* at 178-79.

**Applying the contextual analysis mandated by the Supreme Court, the Magistrate was right to conclude that the state court committed no AEDPA error in rejecting this claim.** As respondent notes (Doc 36 at 6-7), the trial court instructed the jury per CALCRIM 355 that petitioner "may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt"; CALCRIM 220 advised the jury that petitioner was presumed to be innocent and the prosecution had to prove him guilty beyond a reasonable doubt and they had to acquit if the prosecution failed to do so and CALCRIM 315, Eyewitness Testimony, advised that the prosecution had the burden of proving beyond a reasonable doubt that he committed the crime, and that the jurors "must find the defendant not guilty" if the prosecution did not carry that burden.

The Court has nothing to add to the Report's able analysis of Ground Four, the claim that the trial court failed to adequately instruct the jury on premeditation, deliberation, and specific intent to kill. *See* R&R at 17-23.

GROUND 5A: SUFFICIENCY OF THE EVIDENCE ON PREMEDITATION AND DELIBERATION

Petitioner claims that the conviction violates his due process rights because the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he acted with premeditation and deliberation and had the specific intent to kill, *see* Pet at 12. As the Magistrate notes, California case law defines "deliberation" to "refer[] to careful weighing of considerations in forming a course of action" and "premeditation" as "thought over in advance." R&R at 28. The Court would further note that to prove that petitioner acted with deliberation,

the prosecution had to prove that petitioner weighed the consequences and considerations of his actions before he took the action. *See People v. Koontz*, 27 Cal.4th 1041, 1080, 46 P.3d 335 (Cal. 2002). In first-degree murder cases, where the prosecution must prove that the killing was willful, deliberate, and premeditated, CALCRIM 521 instructs juries that "'willfully' means the defendant intended to kill, 'deliberately' means the defendant weighed the considerations for and against his choice and acted knowing the consequences of his decision, 'with premeditation' means the defendant decided to kill before completing the act which caused death, and 'a decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated.'" *People v. Egurrola*, 2012 WL 3631247, *3 (Cal. App. Aug. 24, 2012), *rev. den.* (Cal. Nov. 14, 2012).

**As the Magistrate notes, however, California law did not require the prosecution to prove that petitioner had a lot of time in which to weigh those consequences and considerations before shooting.** *See* R&R at 28 (quoting *Solomon*, 49 Cal.4th at 1223). "The true test is not the duration of time as much as it is the extent of the deliberation." *Koontz*, 46 P.3d 335 (citing *People v. Mayfield*, 14 Cal.4th 668, 767, 60 Cal. Rptr.2d 1, 928 P.2d 485 (Cal. 1997)); *cf., e.g., People v. Barker*, 2014 WL 1156245 (Cal. App. Mar. 24, 2014) (affirming conviction for first-degree murder with the special circumstance of lying in wait, panel approved the instruction that "lying in wait need not continue for any particular period of time provided that its duration be substantial, that is an amount of time that shows the killer had a state of mind equivalent to premeditation or deliberation.").

The Magistrate rightly states (R&R at 28) that in considering whether petitioner acted with deliberation and premeditation, California courts consider three types of evidence: planning activity, pre-existing motive, and the manner of killing. **As an earlier California Supreme Court decision explained in more detail,**

> The type of evidence which this court has found sufficient to sustain a finding of premeditation and deliberation falls into three basic categories:
>
> (1) facts about how and what defendant did [p]rior to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing – what may be characterized as 'planning' activity;
>
> (2) facts about the defendant's [p]rior relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered or rash impulse hastily executed'; or

    (3)    facts about the nature of the killing from which then jury could infer that the Manner of killing was so particular and exacting that the defendant must have intentionally killed according to 'a preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2).

*People v. Anderson*, 70 Cal.2d 15, 26-27, 447 P.2d 942, 949 (Cal. 1968). The state supreme court typically sustains first-degree murder convictions where the prosecution presented all three types of evidence of premeditation and deliberation. *See Anderson*, 447 P.2d at 949. If the prosecution does not present all three types of evidence that a defendant acted deliberately and with premeditation, a first-degree murder conviction will be sustained only if the prosecution presented "at least extremely strong evidence of (1) [planning] or evidence of (2) [motive] in conjunction with either (1) [planning] or (3) [manner of killing]." *See id*. With regard to the first type of premeditation/deliberation evidence, planning, the prosecution presented testimony that petitioner placed the firearm in his vehicle on the morning of the shooting and had it readily accessible when he encountered the victim. *See* R&R at 29-30. With regard to the second and third types of premeditation/deliberation evidence (pre-existing motive & manner of killing), there was testimony that petitioner followed Pedro and shot him when he spotted Pedro driving down the street, deliberately approached the victim's stationary vehicle twice after the first round of gunshots, shot multiple additional rounds at Pedro and hit him twice, and that Pedro saw petitioner point the rifle at him before the second volley, R&R at 29-30.

    **It was not contrary to or an unreasonable application of *Jackson* to find that the evidence presented at trial was sufficient to permit a rational jury to find that petitioner acted with premeditation and deliberation.** California appellate courts hold that "a close-range shooting to the head or face without evidence of struggle or provocation" tends to support a finding of premeditation for purposes of first-degree murder. *See People v. Nava*, 2013 WL 3810810, *3 (Cal. App. July 22, 2013) ("Placencia was killed by a single gunshot to the face; there was no evidence of a struggle or provocation. This, too, supported an inference of premeditation.") (citing *People v. Marks*, 31 Cal.4th 197, 230, 72 P.3d 1222, 1224 (Cal. 2003) (the manner of killing, a close-range shooting without any provocation (defendant discussed baseball game with victim before shooting him) or evidence of struggle, demonstrated premeditation and deliberation)). Moreover, the evidence was that petitioner fired multiple shots in two or more volleys. The firing of multiple shots, or similar conduct with weapons other than firearms, is also competent "type 3" evidence of premeditation and deliberation. *See Acklin v. Lewis*, 2013 WL 5175505, *12 (C.D. Cal. Sept. 11, 2013) (denying § 2254 challenge to state court's determination that evidence was sufficient to sustain conviction for first-degree murder, noting, "[T]he nature of the shooting . . . further supports a finding that petitioner acted with premeditation and deliberation. Petitioner

fired not one, but three shots at Muro – each of which on its own was fatal.") (citing, *inter alia*, *People v. Perez*, 2 Cal.4th 1117, 1127, 831 P.2d 1159, 1164 (Cal. 1992) ("The manner of killing is also indicative of premeditation and deliberation. The evidence of blood in the kitchen knife drawer supports an inference that defendant went to the kitchen in search of another knife after the steak knife broke. This action bears similarity to reloading a gun or using another gun when the first one has run out of ammunition.")). **Petitioner's objection (Doc 34 at 29-34) identifies no specific defect in the Report's analysis of this insufficient-evidence claim.**

GROUND 5B:   SUFFICIENCY OF THE EVIDENCE OF SPECIFIC INTENT TO KILL

Nor did the Court of Appeal unreasonably apply or rule contrary to *Jackson* by determining that the evidence at trial was sufficient for a rational factfinder to find that petitioner had the specific intent to kill. As petitioner states, under California law the specific intent to kill cannot be satisfied by implied malice. *See* Doc 34 at 34-35 (citing, *inter alia*, *People v. Coleman*, 48 Cal.3d 112, 141-42, 768 P.2d 32 (Cal. 1989)). Petitioner is also right that under California law in effect at the time of his trial, the specific intent to kill cannot be inferred merely from the commission of another dangerous crime, *see* Doc 34 at 35 (citing, *inter alia*, *People v. Swain*, 12 Cal.4th 593, 909 P.2d 994 (Cal. 1996)), nor can specific intent to kill be inferred merely from the aiming and firing of a firearm, *see* Doc 34 at 35 (citing *People v. Ratliff*, 41 Cal.3d 675, 695, 715 P.2d 665 (Cal. 1986)).

Rather, petitioner points out, California law requires that the specific intent to kill be affirmatively proved by direct evidence or by "solid inference." *See* Doc 34 at 35-37 (citing *People v. Belton*, 105 Cal. App.3d 376, 381 (Cal. 1980) (citing, *inter alia*, *People v. Snyder*, 15 Cal.2d 706, 708, 104 P.2d 639 (Cal. 1940)); *see also People v. Howard*, 211 Cal. 322, 295 P. 333 (Cal. 1930) (on appeal from first-degree murder conviction, Court held that the evidence established no more than second-degree murder). Petitioner then asserts, "there was no evidence of Petitioner's conduct before the shooting, no evidence [petitioner and the victim] knew each other, no threats, and no gang overtones. There was nothing from which a reasonable juror could claim to know, beyond a reasonable doubt, what Petitioner' intent was . . . ." Doc 34 at 40; *see also* Pet's Reply (Doc 37) at 14 ("[T]he jury was presented here with . . . very little evidence concerning Petitioner's mental state.").

**This objection identifies no defect in the Magistrate's analysis.** The Magistrate showed that under a reasonable application of *Jackson*, a state court could conclude that a rational jury could find petitioner specifically intended to kill per California precedent: there was evidence that petitioner fired a rifle at Pedro from less than three car-lengths away, causing Pedro's vehicle to crash, pulled up to the now-motionless vehicle and fired 6-7 more shots directly at Pedro (hitting Pedro in the leg), and then pointed the rifle at Pedro and fired *another* 3-4 shots. *See* R&R at 29 (citing, *inter alia*, *Villegas*, 92 Cal. App.4th at 1224-25, for holding that State sufficiently proved intent to kill where it presented evidence that defendant fired six shots into victim's vehicle

from 25 feet away, breaking the window and hitting the driver with non-fatal shots). As to petitioner's complaint that certain types of evidence were *not* presented at trial, he identifies no Supreme Court decision holding that a jury may not find specific intent to kill unless the prosecution proves that the shooter and victim knew each other, that the shooter threatened the victim, or that there were "gang overtones" to the shooting.

ACTUAL-INNOCENCE CLAIM LACKS MERIT

In his objections, petitioner makes assertions about actual innocence which are from clear. *See* Gov's Response (Doc 36) at 8 ("This portion of the objections appears to be a recitation taken from some other document. It makes no sense because the portion Alvarez cites goes against him. Thus, he states his claim of actual innocence is procedural rather than substantive and that it is entitled to a lesser degree of respect. Respondent can only assume that [petitioner] is simply arguing that based on ineffective assistance of counsel and prosecutorial misconduct, he is innocent."). If petitioner is claiming that he is entitled to habeas relief because he is actually innocent, it is not clear whether he ever exhausted an actual-innocence claim.

**In any event, without regard to exhaustion, he has not made out even a colorable claim of actual innocence as a basis for federal habeas relief. First,** the Supreme Court recently reaffirmed that it has never recognized a freestanding claim of actual innocence as a ground for habeas corpus relief, except possibly in death-penalty cases. *See McQuiggin v. Perkins*, – U.S. –, 133 S. Ct. 1924, 1931 (2013). This is not a death-penalty case. Thus it cannot be said that the state courts contradicted or unreasonably applied any *U.S. Supreme Court holding* by "allowing" petitioner to be convicted despite his alleged actual innocence.

**Second,** a claim of actual innocence must be supported by new reliable evidence showing that it is more likely than not that no reasonable jury would have convicted him if presented with the new evidence. *See McQuiggin*, 113 S. Ct. at 1935. Here, petitioner fails to identify new reliable evidence. Rather, he merely challenges the sufficiency of the evidence presented at trial. Actual innocence is not to be based on a finding that insufficient evidence was presented at trial, but rather upon affirmative evidence of innocence. *See US v. Ratigan,* 351 F.3d 957 (9th Cir. 2003) (in a bank-robbery case, lack of proof of FDIC insurance was not sufficient to establish actual innocence in the absence of affirmative evidence that the insurance did not exist). Petitioner presents no such affirmative evidence of actual innocence, so this claim fails.

PETITIONER IS NOT ENTITLED TO A CERTIFICATE OF APPEALABILITY

In practice, "[i]t is a 'rare step' for a district court to issue a COA," *McDaniels v. McGrew*, 2013 WL 4040058, *3 (C.D. Cal. Aug. 8, 2013) (Fairbank, J.) (quoting *Murden v. Artuz*, 497 F.3d 178, 199 (2d Cir. 2007)

MINUTES FORM 90                                                          Initials of Deputy Clerk   jmb
CIVIL - GEN

(Hall, J., concurring in judgment)). A COA may issue only if "the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court is mindful that it must resolve doubts about the propriety of a COA in the petitioner's favor, *see Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (en banc), but no such doubt exists here. Reasonable jurists would not find it debateable that the California courts did not rule contrary to or unreasonably apply any Supreme Court holding – as required for habeas relief under § 2254(d)(1) – in denying his claims for IAC, prosecutorial misconduct, instructional error, and insufficient evidence. Nor would they find it debateable that petitioner has failed to show by clear and convincing evidence that the state courts' denial of those claims rested on any erroneous findings of fact – as required for habeas relief under § 2254(d)(2). Nor would reasonable jurists find it debateable that the putative claim for actual innocence is clearly not colorable. Thus, none of petitioner's claims is "adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 3385 n.4 (1983).

## ORDER

Petitioner's Objection **[Doc # 34] is OVERRULED**.

The Report and Recommendation **[Doc # 30] is ADOPTED.**

The 28 U.S.C. § 2254 habeas corpus petition **[Doc # 1] is DENIED** for lack of merit.

Petitioner's "request for order for status quo" **[Doc #21] is DENIED as moot**.

A Certificate of Appealability is **DENIED**. This is a final order, but it will not be appealable unless petitioner obtains a certificate of appealability from the U.S. Court of Appeals.[7]

As required by FED. R. CIV. P. 58(a)(1), final judgment will be issued as a separate document.[8]

IT IS SO ORDERED.

---

[7] *See Muth v. Fondren*, 676 F.3d 815, 822 (9th Cir.) (citing § 2253(c)(1)(B)), *cert. denied*, – U.S. –, 133 S. Ct. 292 (2012)); *see also* FED. R. APP. P. 22(b)(1).

[8] *See Jayne v. Sherman*, 706 F.3d 994, 1009 (9th Cir. 2013). *Accord In re Taumoepeau*, 523 F.3d 1213, 1217 (10th Cir. 2008) ("A combined document denominated an 'Order and Judgment,' containing factual background, legal reasoning, as well as a judgment, generally will not satisfy the rule's prescription.").

MINUTES FORM 90                                       Initials of Deputy Clerk ___jmb____
CIVIL - GEN